M. David DUBB, Appellant,

v.

Paul S. GASTON and Philip P.
Friedlander, Appellees.

No. 3961.

District of Columbia Court of Appeals.

Argued Oct. 10, 1966.

Decided Dec. 9, 1966.

Mervyn I. Aronoff, Washington, D. C.,
for appellant. Irving B. Yochelson, Washington, D. C., also entered an appearance for
appellant.

Mark P. Friedlander, Washington, D. C.,
with whom Mark P. Friedlander, Jr.,
Blaine P. Friedlander, Washington, D. C.,
and Harry P. Friedlander, Arlington, Va.,
were on the brief, for appellees.

Before HOOD, Chief Judge, and
QUINN and MYERS, Associate Judges.

HOOD, Chief Judge:

On August 13, 1958, appellant bought 4,000 shares of common stock of Macinar, Incorporated, paying $3,000 or 75 cents per share.[1] At the time of purchase appellant received a letter from appellees, the president and vice-president of the corporation, stating:

> On your purchase of 4000 shares of Macinar, Incorporated Common stock, this letter is your assurance that this block of stock will be repurchased from you after one year from date at $1.00 per share.

> If at any time you desire to sell the stock in the open market, you will be privileged to do so, but such sale in the open market relieves the signers of this letter from any further obligation.

In January or February of 1959 appellant purchased an additional 5,000 shares at $1 per share. Appellant testified he was promised a letter similar to the one he received at the time of his first purchase, except that the repurchase price was to be $1.25, but he never received such letter. On July 11, 1960 appellant, through his attorney, demanded that appellees repurchase his 9,000 shares for $9,000. Appellees refused and appellant brought this action to recover $9,000. The trial court denied recovery and this appeal followed.

■ We dispose first of the claim as it relates to the sale of the 5,000 shares. The trial court disregarded this claim and we think rightfully so. Appellant's testimony regarding the oral promise to give him a "buy back" agreement was so vague and indefinite as to time and terms that it would not support a legal claim.[2]

■ With respect to the claim on the agreement relating to the 4,000 shares, appellant testified that prior to his written demand he made numerous oral demands on appellees to repurchase the shares in accordance with the agreement, but the trial court found that the oral demands were not established by the testimony. Study of the transcript convinces us that this finding was permissible.

We turn to the main question presented on this appeal. Was the trial court correct in holding that the agreement required appellant to exercise his right within a reasonable time after August 13, 1959, and that the delay in exercising the right until July 11, 1960, was an unreasonable delay?

■ We think it quite clear that, under the terms of the agreement, if appellant held the 4,000 shares of stock for one year after his purchase, he was entitled to have appellees repurchase the stock for $4,000. Indeed, all parties agree that this was their intention. The question presented is how long after the lapse of one year could appellant wait before demanding the repurchase. It is not logical to assume that the parties intended that appellant could wait indefinitely to exercise his right. The only logical conclusion is that appellant had the right to demand repurchase at the end of the year or within a reasonable time thereafter.[3] What constitutes a reasonable time under the circumstances is ordinarily a question of fact, and we cannot say the trial court was in error in holding that a period of nearly eleven months was an unreasonable time in the circumstances of this case.[4]

■ Appellant contends that in any event he was entitled to judgment against

---

1. Apparently these shares were a part of the original issue of stock.

2. This is illustrated by appellant's claim in his complaint for $5,000 for the 5,000 shares, but according to his testimony he would have been entitled to $1.25 per share or $6,250.

3. Starkweather v. Gleason, 221 Mass. 552, 109 N.E. 635 (1915); Odden v. Jamison, 129 Minn. 489, 152 N.W. 871 (1915).

4. See cases collected at 144 A.L.R. 895, 905 (1943).

appellee Friedlander because of Friedlander's failure to appear at trial and testify. Friedlander filed an answer and was represented at trial by counsel, and accordingly was not in default. Appellant was not entitled to judgment against Friedlander unless appellant proved his case.[5] This he failed to do.

Affirmed.

---

5. See Klein v. Rappaport, D.C.Mun.App., 90 A.2d 834 (1952).