**Linda THOMAS, Petitioner, Respondent,**

v.

**Gary FEY, Appellant.**

**No. C5–85–773.**

Court of Appeals of Minnesota.

Nov. 5, 1985.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., and James K. Appleby, Asst. Hennepin Co. Atty., Minneapolis, for petitioner, respondent.

Cortlen G. Cloutier and Joseph F. Leoni, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

Gary Fey appeals from an order and judgment of paternity entered by default. Fey contends that he was denied due process of law because the matter was heard as a default, that there is insufficient evidence to support the judgment of paternity, and that a letter in possession of respondent's attorney was improperly withheld from the trial court. Respondent moved to strike portions of appellant's brief and appendix not a part of the record on appeal. We affirm.

## FACTS

Linda Thomas commenced action against appellant alleging that Fey had sexual intercourse with her during June, July, and August of 1980, and was the father of her child. Thomas gave birth on April 4, 1981. At that time Donald Lesnau signed an affidavit of parentage, and his name appeared on the birth certificate. Thomas was never married to either Lesnau or Fey.

Fey denied he was the father and denied he ever had intercourse with Thomas.

The trial court ordered Lesnau impleaded, and ordered that all parties submit to blood testing. Fey was ordered to provide financial information no later than March 20, 1984.

Because Thomas was receiving public assistance, the county intervened to establish temporary support pursuant to Minn.Stat. § 257.62 (1984). The county served interrogatories and requests for production of documents on Fey April 2, 1984.

Neither Fey nor his attorney appeared at a hearing on temporary support. The court ordered Fey to appear and respond to the requested discovery by June 5, 1984. When Fey did not comply, a temporary support order of $400 per month was entered by default. Fey's attorney at this time was Jerrold Hartke.

On September 6, 1984, Fey was served with notice of motion for default adjudication of paternity because he failed to appear or comply with the order for discovery. Fey finally supplied financial information October 29, 1984.

The first default motion was heard on November 1, 1984. The trial court granted a continuance and again ordered that Fey comply with discovery within 10 days. Attorney Hartke appeared, and agreed to supply the requested documents. No documents were provided.

A second motion for default judgment was served on January 3, 1985. Hearing was scheduled for January 25, 1985, at 9:00 a.m. Attorney Hartke called the family court at 8:30 a.m. that morning to request a continuance. The continuance was denied and the hearing proceeded without Fey or his attorney.

At the default hearing, Linda Thomas testified that she had sexual relations with Fey during June, July, and August 1980, and that her child was born in April of 1981. Thomas also submitted copies of the blood tests which showed a 99.997 percent probability that Fey could be the father. Thomas testified that the child and Fey both have the same rare hereditary disease. Blood tests showed a zero percent probability that Lesnau was the father.

The trial court found that paternity had been established against Fey:

> The evidence that Mr. Fey is the father of the child is—I was going to say overwhelming; it's certainly more than meets the burden and it doesn't seem appropriate to delay this proceeding further.

Fey's motion for reconsideration of the default judgment was denied by order of February 15, 1985. Fey did not appeal this order. Only the paternity judgment was appealed.

Respondent moved to strike portions of appellant's brief and appendix. By order of August 13, 1985, decision on that motion has been deferred until consideration of this appeal on the merits.

### ISSUES

1. Was appellant denied due process of law?

2. Did the trial court abuse its discretion when it adjudicated paternity by default?

3. Should respondent's motion to strike portions of appellant's brief be granted?

### ANALYSIS

#### I.

Paternity actions are governed by the Rules of Civil Procedure. Minn.Stat. § 257.65 (1984). Fey has not alleged any violation of the Rules of Civil Procedure, nor has he argued that the rules are unconstitutional in any respect. Fey simply contends that the default judgment of paternity denied him the "opportunity to be heard."

This is not a case where a default judgment was entered without notice to a party. Fey interposed an answer. He served a request for production of documents and submitted to blood testing. He provided some financial information.

Fey on several occasions violated direct orders of the trial court with respect to appearance and discovery. He never appeared personally at any hearing. Fey had numerous opportunities to be heard and failed to avail himself of them. The failure of his attorney to appear at the default proceeding is neglect chargeable to Fey. *Finden v. Klaas*, 268 Minn. 268, 128 N.W.2d 748 (1964). Nothing in the record suggests that his attorney had failed to inform Fey of the trial.

We note that Fey has an additional remedy available to him. He may bring a motion to vacate the default judgment pursuant to Minn.R.Civ.P. 60.02. Fey's claim that he has been denied due process of law is meritless.

#### II.

Parentage cases are governed by Minnesota Rules of Civil Procedure. Minn. Stat. § 257.65 (1984). Judgment by default is expressly included in the list of sanctions for failing to obey a court order. Minn.R. Civ.P. 37.02(2)(c). The rule permits the court at its discretion to choose a "just" sanction from among those listed. *Bartlow v. Brinkman*, 364 N.W.2d 458, 459 (Minn.Ct.App.1985), *pet. for rev. granted* (Minn. May 20, 1985).

In *Bartlow*, this court reversed a default judgment of paternity based on a failure to comply with court-ordered blood testing. The trial court in *Bartlow* heard no evidence to support the judgment. *Id.* at 459.

This case is factually distinguishable from *Bartlow*. The sanction of default was properly applied against Fey because of his repeated failure to comply with court orders and because the trial court's finding of paternity was supported by the evidence. Thomas testified that Fey was the father.

Blood tests showed there was a 99.997% probability that Fey could be the father. The only other candidate was entirely eliminated by the blood tests. The trial court did everything possible to ensure that judgment against Fey in his absence was justified, and its decision was based on the most reliable evidence available. *See Wessels v. Swanson*, 289 N.W.2d 469, 470 (1979).

Accuracy is a primary concern in the adjudication of parentage because of the effect such judgments have on the lives of the parties involved. We are mindful that the most affected party is the child whose parentage is at issue. The child's interests were protected by the trial court's actions in this case. Paternity was established by the overwhelming weight of the evidence.

### III.

Fey has placed great emphasis on a letter allegedly written by Thomas which purports to exonerate him of paternity. Thomas has moved to strike the letter and portions of Fey's brief which refer to it as not being part of the record on this appeal. Extensive argument on the contents, authenticity, and circumstances surrounding both this letter, and an identical letter allegedly in Fey's handwriting, were presented by counsel for both parties.

> The papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases.

Minn.R.Civ.App.P. 110.01 (1984).

The Minnesota Supreme Court has developed a limited exception to this rule. Documentary evidence may be used to support a judgment or verdict if that evidence is conclusive and uncontroverted. *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581 (Minn.1977); *Mattfeld v. Nester*, 226 Minn. 106, 32 N.W.2d 291 (1948).

Here the letter was shown to, but not received by, the trial court. It does not fall within the *Plowman* exception since it is offered for the purpose of overturning a judgment and its contents are anything but conclusive. Production of record evidence is never allowed in an appellate court for the purpose of reversing a judgment. *Id.* Respondent's motion to strike is accordingly granted.

### DECISION

The trial court did not abuse its discretion when it adjudicated paternity against appellant by default. Appellant was not denied due process of law. Respondent's motion to strike portions of appellant's brief and appendix is granted.

Affirmed.